Statement.
MONROE, J.
Plaintiff, alleging itself to be a creditor of Henry Holzner in an amount exceeding $8,000, brings this suit to set aside certain transactions, purporting to be sales of real estate made by him to his codefendant, who is also his brother-in-law, and was employed by him for many years in the capacity of barkeeper; the cause of action alleged being that said transactions were either fraudulent simulations or fraudulent sales, and, whether the one or the other, were concocted to defraud the creditors of Holzner, and particularly the plaintiff. Both defendants plead the general issue.
It appears from the evidence that the defendant Holzner had been for a number of years the proprietor of a barroom known as the “Two Brothers,” having acquired the real estate in which the business was conducted, together with other real estate, during the life of his wife and as community property, so that, since the death of his wife, which occurred in 1897, he has owned it in indivisión with his two minor children. *722 It further appears that for many years prior to 1902 the defendant Thoman had been employed by Holzner as barkeeper, that his wife and Mrs. Holzner were sisters, and that upon the death of Mrs. Holzner in 1897 they (Thoman and his wife) went to live at Holzner’s house, where they have since resided; Mrs. Thoman having charge of the Holzner children. It further appears that in 1902, Holzner sold the business of the “Two Brothers” to Thoman, and that the latter has since then conducted that business for his own account. We infer that Holzner has in the meanwhile, for part of the time at least, been the agent in Shreveport of the Dallas Brewery, plaintiff. Certain it is that in May, 1904, he owed the plaintiff in the neighborhood of $8,000 on open account for beer, and also a debt secured by mortgage which, with interest, etc. (when settled on May 16, 1904), amounted to $6,623.
In May, 1904, Griffing, the travelling agent •of the Dallas Brewery, having gone to Shreveport for that purpose, called on Holzner and told him that he understood that he (Holzner) had agreed to handle the beer of the Shreveport Brewery, and that he (Griffing) was specifically instructed by the Dallas Brewery to demand a settlement of its account. Holzner replied that he could do nothing about it just then, and Griffing telephoned for the president of his company to come to Shreveport, which that officer did, and on May 5th they called together on Holzner and he promised to meet them at 2 o’clock in the afternoon. He failed to keep his appointment, and the Dallas company instituted suit against him on its account. There was also a proceeding on the mortgage debt, but whether that was instituted at the same time is not altogether clear. There is no doubt, however, that Holzner, on the same day, and after the filing of the suit on the account, executed three acts, purporting to be sales to Thoman of his undivided interest in three parcels of real estate which he owned in common with his children, and that the officer before whom the acts were executed was requested to keep them out of the newspapers, a request which he says is frequently made, but not complied with. The consideration expressed in the acts so executed aggregates $12,500, of which $2,110 is said to have been cash; the balance being represented by notes, or the assumption of mortgages. Thoman testifies that he had at that time $2,000 or $3,000, which he kept in a safe; but he does not say, nor does any one else, that any money belonging to him was actually used and finally parted with in buying the property in question, nor does he (as a witness), nor does Holzner, deny the imputation of fraud, or testify that the sales in question were made in good faith. There can be little doubt, considering the relations between the two men, that Thoman knew that Holzner was being pressed, and, probably, that he was being sued, on the claim of the Dallas Brewery, and the evidence makes it sufficiently clear that Holzner was insolvent, or at all events that, with the property in question alienated, it would be impossible for the plaintiff to recover from him the amount due it. In fact, whilst the present suit was pending, judgment was obtained and execution issued in the suit on the account, and, this case having been reopened for that purpose, it was shown by the sheriff’s return that the fi. fa. was unsatisfied; one piece of property owned by defendant having realized $1,050, and another (and the only remaining piece) not having been sold for lack of bidders, no doubt because of the mortgages resting on it.
Opinion.
The case presented by the record is one in which a debtor in insolvent circumstances, immediately after being sued for a large amount, makes what purport to be sales of *724 nearly all of his salable property to a brother-in-law, living in his house, who had for years been employed by him, and who is not shown to have had the means wherewith to make the purchases, and, both being charged with fraud, neither of them denies it, or affirms the good faith of the transactions, though both take the stand as witnesses. We agree with the judge a quo that these facts justify the conclusion that the sales were fraudulent simulations.
The judgment appealed from is accordingly affirmed, at the costs of the appellants.